BERNICE BOUIE DONALD, Circuit Judge,
dissenting.
Let us recall, for a moment, that a man is dead; that the cause of his death was the use of “electrical stun devices,” or ta-sers, by three different officers, at twelve different times, in five undifferentiated minutes. Recall that eight of those times occurred in less than one minute and that one officer alone used his taser on the man six times. Neither the two officers who originally joined that officer, nor the two others who later arrived, interceded on the man’s behalf. Recall further that the man was fifty-two years old.
Let us consider that the deceased was mentally ill; that he had lived alone in Covington, Kentucky for twenty-five years with no arrests, indictments, or convictions. Consider that in responding to a 911 call about his unusual behavior, police officers failed even to notice the deceased, much less to register him as a threat, and drove benignly by him without stopping despite his six-foot, six-inch, four-hundred-pound frame. Only after a second call did police officers finally search out, repeated *797 ly shock, and forcefully subdue Leroy Hughes. The suspected crime that precipitated their conduct was a misdemeanor.
Let us bear in mind that when police officers encountered Leroy Hughes, he did not appear armed — the misdemeanor at issue was, after all, concealment. Yet upon encountering him, the officers asked no questions. Instead, the encounter that ended in a man’s death began with an order to get on the ground, issued by an officer crouching behind a car door with his gun drawn. Bear in mind that only after officers had delivered more than 14,-400 volts to his body,[1] driven him to the ground, and shackled his arms and legs did they “sp[eak] to [Leroy] Hughes in an effort to find out his name and other identifying information[.]” (Appellee Br. at 28.)
Let us acknowledge the obvious tension between the inference that Leroy Hughes sought to flee and the fact that he “took several fast-paced steps” toward one of the officers. (Appellee Br. at 16.) Even assuming that Leroy Hughes sought to flee, quickness was not likely a defining characteristic of his six-foot, six-inch, four-hundred-pound frame. Acknowledge the irony in the representation that Leroy Hughes “violently resisted arrest” when he had not fully turned to view the second officer who shocked him before he was tackled by two or three others. Acknowledge further that his lone attempt to use any of the ordnance later recovered from his pockets — a handgun, a speed loader, four magazines, two boxes of ammunition, assorted loose bullets, and a knife — came after the first two of the twelve taser shocks and consisted of his throwing a box of ammunition at an officer as he stated that the handgun was not loaded.
As the majority recounts, we are charged by the Supreme Court to consider three factors in assessing claims of excessive force that arise from investigatory stops or arrests: (1) the severity of the crime at issue; (2) whether the claimant posed an immediate threat of safety to the officers or others; and (3) whether the claimant actively resisted arrest or attempted to flee. Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1969). The dispositive inquiry, however, is “whether the totality of the circumstances justified [the] particular sort of search or seizure” that is alleged to have violated the Fourth Amendment. Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). If we recall, consider, bear in mind, and acknowledge the totality of the circumstances that led to the death of Leroy Hughes, we cannot fail to recognize that it is error to affirm the grant of summary judgment in favor of the officers who seized him.
We who sit in relative safety behind a bench, garbed in black robes and guarded by federal marshals and county sheriffs sworn to protect us, must never forget “that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force necessary in a particular situation.” Graham, 490 U.S. at 397, 109 S.Ct. 1865. That Leroy Hughes was allegedly armed, mentally ill, and in the vicinity of two elementary schools is a searing indictment in an age framed by horrific tragedies in Aurora and Columbine, Colorado; Tucson, Arizona; and Newtown, Connecticut.[2] *798 And combined with his uncommonly large size and continuous reaching toward his waistband, it is little wonder that police officers found it necessary to intervene. Less clear, however, is whether the officers’ chosen intervention, which resulted in the death of Leroy Hughes, was reasonable.[3]
For as much as the deaths in Colorado, Arizona, and Connecticut thread the tapestry of rapidly evolving circumstances that police officers must consider, so, too, do the deaths of Amadou Diallo,[4] Sean Bell,[5] Oscar Grant,[6] and Jonathan Ferrell.[7] And while a hundred reasonable arrests may go unmentioned for every egregious exception, we cannot ignore the seeds of systemic inequalities sown in our Nation’s history and lain bare by diligent review. See, e.g., Floyd v. City of New York, No. 08 Civ. 1084, 2013 U.S. Dist. LEXIS 113271 (S.D.N.Y. Aug. 12, 2013) (Scheindlin, J.), stayed by Ligon v. City of New York, 538 Fed.Appx. 101 (2d Cir.2013). Nor can we fail to mourn the bitter fruit those seeds have spawned,[8] even as we strive to root it out.
Leroy Hughes may have been confused, due to his schizophrenia, rather than resistant or non-compliant. This is a factor *799 that the trier of fact must weigh along with all the other evidence. See Eldridge v. City of Warren, 538 Fed.Appx. 529, 533 (6th Cir.2013) (citing Hagans v. Franklin Cnty. Sheriff’s Office, 695 F.3d 505, 509 (6th Cir.2012)) (“[U]nder our precedent it is unreasonable to tase a nonresisting suspect”). When confronted by police, Leroy Hughes, who moved toward, rather than away from, an arresting officer, may or may not have attempted to flee. Although Leroy Hughes carried considerable concealed ordnance, he neither threatened nor attempted to use it. And any violence attributable to Leroy Hughes appears to have been precipitated by, rather than having provided a reason for, the use of force against him. But Leroy Hughes is dead.
Whatever actually happened on December 3, 2008, the determination of the facts on which the reasonableness of the police officers’ conduct in this case depends is reserved for the jury, as the finder of fact. See, e.g., Vetters v. Berry, 575 F.2d 90, 95 (6th Cir.1978) (“When the evidence is in dispute it is singularly within the province of the jury to decide which version of the facts is to be accepted.” (Citation and internal quotation marks omitted)). And even assuming a definite set of facts, until all inferences have been drawn in favor of Leroy Hughes, whether the officers’ conduct was reasonable remains, itself, a material question of fact. See Chappell v. City of Cleveland, 585 F.3d 901, 909 (6th Cir.2009) (quoting, inter alia, Scott v. Harris, 550 U.S. 372, 381 n. 8, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)). My colleagues in the majority fail to respect the role that the jury should play in this matter and, consequently, endorse the usurpation of that role in the face of genuine issues of material fact. Because I cannot reconcile such an endorsement with the distinct roles of the trial judge and the jury, I respectfully dissent.

. The officers’ expert, Michael Brave Bates, reported that "[t]he peak voltage delivered to the body [by a single use of the tasers at issue] is about 1,200 volts[.]” (R. 54-1, Brave Report, Nov. 10, 2008, at 11, Bates No. 000055.)

. See Dan Frosch & Kirk Johnson, Gunman Kills 12 in Colorado, Reviving Gun Debate, *798 N.Y. Times, July 20, 2012, http://www. nytimes.com/2012/07/21/us/shooting-at-colorado-theater-showing-batman-movie. html?pagewanted=all; Shailagh Murray & Sari Horwitz, Rep. Gabrielle Giffords Shot in Tucson Rampage; Federal Judge Killed, Wash. Post, Jan. 9, 2011, http://washingtonpost.com/ wpdyn/content/article/2011/01/08/AR201101 0802422.html; James Barron, Nation Reels After Gunman Massacres 20 Children at School in Connecticut, N.Y. Times, Dec. 14, 2012, http://nytimes.com/2012/12/15/nyregion/ shooting-reported-atconnecticut-elementary school.html?pagewanted=all.

. As the Supreme Court has explained, only after "the relevant set of facts is determined and all reasonable inferences are drawn in favor of the plaintiff, to the extent supported by the record,” does objective reasonableness become a question of law. Chappell v. City of Cleveland, 585 F.3d 901, 909 (6th Cir.2009) (quoting, inter alia, Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 n. 8 (2007) (emphasis added)); cf. Muehler v. Mena, 544 U.S. 93, 108, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) (Stevens, J., concurring) (“Under Graham [v. Connor, supra, 490 U.S. at 396, 109 S.Ct. 1865], the trier of fact must balance ‘the nature and quality of the intrusion on the individual’s Fourth Amendment interests’ [sic] against the countervailing governmental interest at stake.' ” (Emphasis added.)). Here, a number of inferences appear to have been drawn against Leroy Hughes.

. See Michael Cooper, Officers in Bronx Fire 41 Shots, and an Unarmed Man Is Killed, N.Y. Times, Feb. 5, 1999, http:llwww.nytimes.comI 1999/02/05/nyregion/officers-in-bronx-fire41-shots-and-anunarmed-man-is-ldlled.html.

. See Cop in 50-Shot Killing of Unarmed Sean Bell to Be Fired, N.Y. Post, Mar. 24, 2012, http://nypost.com/2012/03/24/cop-in-50-shot-killingof-unarmed~sean-bell-to-be-fired/; see also
David W. Chen & Al Baker, New York to Pay $7 Million for Sean Bell Shooting, N.Y. Times, July 27, 2010, http://www.nytimes.com/ 2010/07/28/nyregion/28bell.html?ref=seanbell.

. See Jesse McKinley, Officer Guilty in Killing That Inflamed Oakland, N.Y. Times, July 8, 2010, http://www.nytimes.com/2010/07/09/us/ 09verdict.html; see also Fruitvale Station (Significant Productions & OG Project 2013) (film about Grant’s death).

. See Kim Severson, Asking for Help, Then Killed by an Officer's Barrage, N.Y. Times, Sept. 16, 2013, http://www.nytimes.com/2013/ 09/17/us/asking-for-help-then-killed-by-anofficers-bairage.htmV?r — 0.

. E.g., Lizette Alvarez & Cara Buckley, Zimmerman Is Acquitted in Trayvon Martin Killing, N.Y. Times, July 13, 2014, http://www. nytimes.com/2013l07/14luslgeorge-zimmennan-verdict-trayvon-martin.html?pagewanted=all; Mary C. Curtis, No Justice for Jordan Davis, More Worry for Parents of Black Children, Wash. Post (Feb. 17, 2014, 12:33 PM), http:// www.washingtonpost.com/blogs/she-the-people/ wp/2014/02/17/no-justice-for-jordan-davismore-worry-for-parents-of-black-children/.